THE COLSON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE COLSON COMPANY OF CALIFORNIA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 85535, 85536.  Promulgated June 10, 1938.

*H. A. Mihills, C. P. A.*, for the petitioners.
*S. B. Pierson, Esq.*, for the respondent.

### OPINION.

MELLOTT: The petitioners, being an "affiliated group" of corporations within the meaning of section 141 of the Revenue Act of 1932, filed a consolidated income and excess profits tax return for the calendar year 1933.  Upon audit the respondent determined a deficiency in excess profits tax against them severally in the amount of $1,128.01.  The facts, all of which were stipulated, may be briefly summarized.

The Colson Co., hereinafter referred to as the Ohio corporation, was a corporation duly organized under the laws of Ohio, engaged

in the manufacture of bicycles, casters, small trucks, etc., and having its principal office at Elyria, Ohio. On May 13, 1932, the Court of Common Pleas of Lorain County, Ohio, appointed Hall Kirkham receiver of all its property, assets, rights, and franchises. He was authorized to operate and use the property of the company and to conduct its business in the usual course, without personal liability for loss. Subsequently, and in September 1932, the receiver was authorized, if in his judgment it should become desirable to do so, "to make the necessary expenditures and investment to organize a California corporation controlled by the receiver for the purpose of handling Colson products on the West Coast." Pursuant to such authorization the Colson Co. of California, hereinafter referred to as the California corporation, was incorporated under the laws of California on September 23, 1932.

The business of the Ohio corporation was conducted by the receiver under the appointment of May 13, 1932, until February 13, 1935, when an order was entered by the District Court of the United States for the Northern District of Ohio, Eastern Division, approving a creditors' petition in proceedings for the relief of debtors under sections 77A and 77B of the Bankruptcy Act. The court thereupon appointed Hall Kirkham, then receiver, as temporary trustee of the debtor's estate.

The National Industrial Recovery Act (48 Stat. 195) was approved by the President June 16, 1933. We show in the margin[1] the portions of sections 215 and 216 of that act which are especially applicable to the issue to be decided.

The regulations issued by the Department provided, in substance, that returns were to be filed by all domestic corporations on or before

---

[1] Sec. 215. (a) For each year ending June 30, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock.

\* \* \* \* \* \* \*

(c) The taxes imposed by this section shall not apply—

\* \* \* \* \* \* \*

(3) to any domestic corporation in respect of the year ending June 30, 1933, if it did not carry on or do business during a part of the period from the date of the enactment of this Act to June 30, 1933, both dates inclusive; \* \* \*

Sec. 216. (a) There is hereby imposed upon the net income of every corporation, for each income-tax taxable year ending after the close of the first year in respect of which it is taxable under section 215, an excess-profits tax equivalent to 5 per centum of such portion of its net income for such income-tax taxable year as is in excess of 12½ per centum of the adjusted declared value of its capital stock (or in the case of a foreign corporation the adjusted declared value of capital employed in the transaction of its business in the United States) as of the close of the preceding income-tax taxable year (or as of the date of organization if it had no preceding income-tax taxable year) determined as provided in section 215. The terms used in this section shall have the same meaning as when used in the Revenue Act of 1932.

(b) The tax imposed by this section shall be assessed, collected and paid in the same manner and shall be subject to the same provisions of law (including penalties), as the taxes imposed by title I of the Revenue Act of 1932.

September 29, 1933, covering the first taxable period under the statute, i.e., from June 16, 1933, to June 30, 1933. Every corporation, which was "doing business" during that period, was subject to the tax and, even if a corporation claimed that it was not doing business or that it was exempt from tax, it was nevertheless required to file a return on the form prescribed by the Department, namely, form 707. If the corporation claimed exemption, it did not need to declare a value for its capital stock or to pay any tax, but it was required to file form 717, being a specific claim for exemption from the tax.

The Department ruled (XII-2 C. B. 405, S. T. 702) that "where a corporation is in the hands of a receiver, the receiver and not the corporation is carrying on the business. * * * and [the corporation] is not subject to the capital stock tax imposed by * * *" the act.

The receiver, relying upon the rulings and regulations, filed a capital stock tax return (form 707) on behalf of the Ohio corporation and a claim for exemption (form 717), which was sustained on May 9, 1934.

The California corporation filed a capital stock tax return for the period required by the act, in which it declared a value of $5,000 for its entire capital stock.

Treasury Decision No. 4390 (XII-2 C. B. 409) was approved September 16, 1933. It provides, among other things, that "An affiliated group of corporations as defined by section 141 of the Revenue Act of 1932, * * * which pursuant to that section, has the privilege of making a consolidated income-tax return, and has exercised such privilege, shall make a consolidated excess-profits tax return. The excess-profits tax shall be computed on such portion of the consolidated net income for the income-tax taxable year of the affiliated group as is in excess of 12½ per centum of the combined adjusted declared value of the capital stock of the members of the group as separately returned under section 215."

The deficiency in excess profits tax was determined by the respondent in accordance with the above ruling, as is shown from his computation, which is as follows:

| | |
|---|---:|
| Net income for excess profits tax computation | $23,185.24 |
| Less: 12½% of $5,000.00, value of capital stock as declared, in the capital stock tax return of The Colson Company of California for the year ended June 20, 1933 | 625.00 |
| The Colson Company (Exemption sustained) | |
| Balance subject to excess profits tax at 5% | 22,560.24 |
| Excess-profits tax liability | 1,128.01 |
| Excess-profits tax previously assessed | None |
| Deficiency in excess-profits tax | $1,128.01 |

Section 141 of the Revenue Act of 1932 grants the privilege, to an affiliated group of corporations, of making a consolidated return of income in lieu of separate returns, upon the condition that all the corporations "consent to all the regulations" prescribed by the Commissioner prior to the making of such return. The making of a consolidated return is, under the act, considered as such consent. The gist of petitioners' contention is that the Treasury decision, rulings, and regulations of the Department *imposed* a tax not specifically placed upon them by an act of Congress.

The parties apparently agree: (1) That the Ohio corporation was not subject to the capital stock tax; (2) that it claimed and was properly granted an exemption; and (3) that if it and the California corporation had filed separate returns of income rather than consolidated returns of income, neither would have been subject to any excess profits tax. It may be that the respondent does not concede No. 3 in this proceeding; but, as will hereinafter be pointed out, at least under his earlier rulings, he did do so. The parties also agree that the Committee Reports indicate (Report of the Senate Finance Committee, 73d Cong., 1st sess.) that the primary object of the excess profits tax on corporations was "to induce corporations automatically to declare a fair value for their corporate stock." They disagree, however, upon the effect of the two sections (215 and 216) upon each other.

The respondent, citing cases which support the well recognized principle that statutes granting an exemption from tax must be strictly construed, concludes that it was not contemplated by Congress that a corporation should be exempted from the payment of an excess profits tax simply because of the fact that it was exempt from the capital stock tax because a receiver was operating its business. Petitioners, on the other hand, contend that section 216 is in itself a tax imposing statute; that it is dependent upon section 215; and that no tax can be imposed under it unless the corporation is subject to a capital stock tax.

We are of the opinion that the construction urged by the petitioners is the more tenable. Section 216 imposes an excess profits tax upon the net income for the year "ending after the close of the first year in respect of which *it is taxable under section 215.*" If there is any ambiguity in this language—and we perceive none—it disappears when the other provisions of the sections are analyzed. Thus, it will be noted that the *amount* of the excess profits tax can only be determined by deducting the 12½ per centum of the "declared value" (under section 215) from the net income. Surely Congress did not intend to subject a corporation to the excess profits tax if its stock had no value and it was not carrying on or doing business. Such

a corporation was specifically exempted from the capital stock tax, as were also charitable corporations, insurance companies, and foreign corporations not carrying on or doing business in the United States. To impose the excess profits tax against a corporation which was not carrying on or doing business, would do as great violence to the language used by Congress as would be done if we were to impose it upon the other corporations which are specifically exempted.

Some support may be found for our conclusion in *Reinecke* v. *Gardner*, 277 U. S. 239. In that case the Supreme Court had before it the following question certified to it by the Court of Appeals for the Seventh Circuit:

Question 1. Is a trustee in bankruptcy, operating under order of the Bankruptcy Court the business of a bankrupt domestic corporation in the year 1917, and realizing net profits from the operation, subject to the excess-profits tax imposed by the Revenue Act of 1917, in a case where the corporation, if itself conducting the business, would, under the Act, have been subject to such tax?

The Supreme Court pointed out that under the Bankruptcy Act (11 U. S. C. A.) the entire property of the bankrupt vested in the trustee, that the income in question was not the income of the bankrupt corporation, but of the trustee, and that it was subject to income and excess profits tax only if the statute authorized the assessment of the tax against the trustee. The Court gave recognition to the provisions of the act which subject trustees in bankruptcy to the income tax, but, in reaching its conclusion upon the question presented, stated that:

The case is different with respect to the excess-profits tax. That tax was imposed by Title II of the Act of 1917 on corporations, partnerships, and individuals engaged in trade or business. The Title made no mention of executors, receivers, trustees or persons acting in a fiduciary capacity, and contained no language corresponding to the quoted provision of Title I, Section 4, extending the additional income tax to "the same incomes" taxed by Section 10 of the Act of 1916. A tax imposed on corporations alone does not extend to a trustee in bankruptcy of a corporation.

It may be that by analogy the same conclusion should be reached here and specific holding should be made that the receiver, as such, is not subject to the excess profits tax because not specifically made so by the act. But we reach the conclusion that the Ohio corporation, under the facts before us, was not subject to such tax by giving full effect to the language of sections 215 and 216, so it is unnecessary to approach the question as it was approached by the Supreme Court in the above case.

Having concluded, as we do, that the receiver would not have been subject to the excess profits tax if he had filed a separate return of income for the taxable year on behalf of the Ohio company, we

must yet determine what effect, if any, the filing of a consolidated return had upon him or the two companies.

We have set out above the portion of Treasury Decision No. 4390 requiring that an affiliated group which has exercised the privilege of making a consolidated return of income, "shall make a consolidated excess-profits tax return." The parent company and its receiver had exercised the option to file a consolidated return of income in 1932, previous to the enactment of the capital stock tax law or the excess profits tax law. It is significant, we think, that neither section 215 nor section 216 contained any provision requiring, or even authorizing, the filing of consolidated returns. Section 215 specifically requires *"every* corporation liable for tax" under it to make a return under oath. Section 216 provides that, "The tax imposed by this section shall be assessed, collected and paid in the same manner, and shall be subject to the same provisions of law (including penalties) as the taxes imposed by Title I (Income Tax) of the Revenue Act of 1932." It may be that the quoted language authorized the Department to permit the use of consolidated returns in connection with the excess profits tax; and, probably in most instances, combining the net incomes and adjusted declared value of the capital stock of the members of the group, as required by the Treasury decision, worked no hardship. Under the facts before us, however, a very definite hardship has resulted; so it is necessary for us to consider whether the requirement that the net incomes and adjusted declared values be consolidated, is, or is not, a valid one.

Upon brief respondent contends that we should not give a "literal construction" to the language of section 216 (b), since to do so, he says, would lead to an unreasonable result. In that connection he points out that a literal construction would make applicable not only the administrative but also the substantive provisions, including both the tax base and the tax rate of the general title, thereby making it impossible to apply the method of computation provided by the sections. Of course, we would approve no such far-fetched construction and we do not do so. We do hold, however, that the act must be strictly construed in so far as it levies an additional tax

It is fundamental that tax imposing statutes are not to be extended by implication. "In case of doubt they are construed most strongly against the government, and in favor of the citizen." *Gould* v. *Gould,* 245 U. S. 151. Nor may such statutes be extended or enlarged under the general power to prescribe rules and regulations. This power is given "not * * * to make law, for no such power can be delegated by Congress", but merely for the purpose of carrying into effect the will of Congress. *Manhattan General*

*Equipment Co.* v. *Commissioner*, 297 U. S. 129; cf. *Panama Refining Co.* v. *Ryan*, 293 U. S. 388; *Schechter Poultry Corporation* v. *United States*, 295 U. S. 495. The Treasury decision and the rulings of the Department, it seems to us, go further than merely laying down a general rule for carrying out the will of Congress. They have the effect, as contended by petitioners, of imposing an excess profits tax upon them because of the fact that they had previously, and before the enactment of the National Industrial Recovery Act, elected to file consolidated returns of income and hence were required to file a consolidated income and excess profits tax return for the taxable year. This, we think, transcends the power of the Department. We hold, therefore, that the respondent erred in determining the deficiencies.

Reviewed by the Board.

*Judgment will be entered for the petitioners.*