WARREN SERVICE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87533.   Promulgated May 17, 1939.

*Robert E. Coulson, Esq., James K. Polk, Jr., Esq.,* and *Talbert W. Sprague, Esq.,* for the petitioner.

*Conway N. Kitchen, Esq.,* for the respondent.

**OPINION.**

LEECH: While the payment of $125,000, although received in 1926, could not be considered as income to the petitioner until used to cover a default by the lessee (*Executors of Estate of George E. Barker*, 13 B. T. A. 562), it was clearly income to petitioner in 1933 when the contingent obligation to pay it back to the lessee was discharged. *Commissioner* v. *Langwell Real Estate Corporation*, 47 Fed. (2d) 841; *H. I. Josey*, 38 B. T. A. 497. See *Virginia Iron Coal & Coke Co.* v. *Commissioner*, 99 Fed. (2d) 919. It was none the less income, although petitioner agreed to hold it for the protection of the holders of petitioner's 6 percent notes, because those notes evidenced petitioner's debt. *Helvering* v. *Blumenthal*, 296 U. S. 552, reversing 76 Fed. (2d) 507, which reversed 30 B. T. A. 591.

The amount of the income thus received by petitioner in 1933, through the tenant's surrender of all interest in the deposited sum, was $125,-

000, and not the then worth of an obligation to pay $125,000 in 1941. *H. I. Josey, supra; Commissioner* v. *Langwell Real Estate Corporation, supra; Farrelly-Walsh, Inc.*, 13 B. T. A. 923. Assets worth $125,000 were freed in 1933 for petitioner's immediate unrestricted use. *United States* v. *Kirby Lumber Co.*, 284 U. S. 1.

But petitioner urges that it suffered losses by the cancellation of the lease which offset any income thus received in 1933. Specifically, it points to its inability to secure a new tenant who would pay as much rent as the tenant had been paying under the lease which was canceled in that year.

It is well settled that disappointment in expectations of profit and mere lessening of income form no basis for a deductible loss. *Henry C. Taylor*, 34 B. T. A. 241; *John F. Blanchard*, 17 B. T. A. 1271; *Frank F. Nicola*, 1 B. T. A. 487.

Moreover, this Board has consistently held that losses in connection with real estate are not deductible so long as the owner of the property retains the title thereto, for the reason that there is no identifiable event to fix the amount of the loss beyond possibility of recoupment. *Greenleaf Textile Corporation*, 26 B. T. A. 737; affd., 65 Fed. (2d) 1017; *A. J. Schwarzler Co.*, 3 B. T. A. 535; *Collateral Mortgage & Investment Co.*, 37 B. T. A. 630. Cf. *Rhodes* v. *Commissioner*, 100 Fed. (2d) 966.

It is difficult to see, on this record, how petitioner suffered any loss other than a reduction of expected profits from an extremely advantageous lease. The property continued to possess the capability of producing income. It was relet on the day of the cancellation for $30,000 a year. That it was now less fruitful than formerly was an economic misfortune which the revenue acts do not palliate through the allowance of a deduction.

We are aware that the court which decided the *Langwell* case, while holding that a sum deposited to secure the performance of a lease constituted income in the year of forfeiture, held that such income might legally be offset by losses resulting from the cancellation of the lease, and that losses of that character were allowable when established by proof that the landlord could not have negotiated another lease as favorable as the one which had been canceled. However, in our view, this ruling ignores the necessity for a closed transaction, such as a sale, to establish a loss and also the possibility of some recoupment through other leasing arrangements. With all due respect for the tribunal which made that ruling, we find ourselves unable to follow it here. See *H. I. Josey, supra.*

In its claims for exemption from capital stock tax, petitioner asserted facts to show that it was not doing business within the meaning of section 215 (a) of the National Industrial Recovery Act and within

the meaning of section 701 of the Revenue Act of 1934. These claims were for the fiscal years ending June 30, 1933 and June 30, 1934. The Commissioner sustained petitioner's claims for exemption for both years on the ground advanced in the claims. Neither the deficiency letter nor respondent's answer in this proceeding repudiate those rulings, although both declare that petitioner is liable for excess profits tax. Respondent's computation of petitioner's excess profits tax shows, moreover, that the declared value of petitioner's capital stock was "none." On this state of the record, we hold that petitioner was exempt from capital stock tax. It follows that there is no liability for excess profits tax, since section 216 (a) of the National Industrial Recovery Act provides that the excess profits tax shall be imposed for "each income-tax taxable year ending after the close of the first year in respect of which it is taxable under section 215." See *Colson Co.*, 37 B. T. A. 1031.

*Decision will be entered under Rule 50.*