## MANHATTAN GENERAL EQUIPMENT CO. *v.* COMMISSIONER OF INTERNAL REVENUE.*

No. 226. Argued January 8, 1936.—Decided February 3, 1936.

---

\* Together with No. 227, *Collier Service Corp.* v. *Commissioner of Internal Revenue.* Certiorari to the Circuit Court of Appeals for the Second Circuit.

*Mr. Laurence Graves,* with whom *Messrs. Emil Weitzner, Samuel H. Kaufman, Brode B. Davis,* and *Isadore Polier* were on the brief, for petitioners.

*Assistant Solicitor General Bell,* with whom *Solicitor General Reed, Assistant Attorney General Wideman,* and *Messrs. Sewall Key, Joseph M. Jones,* and *John R. Benney* were on the brief, for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

These cases involve identical facts and questions of law, and were disposed of by the court below in one opinion. 76 F. (2d) 892. The facts, so far as they concern the question here, are taken from the statement of that court.

"The petitioners are affiliates of United Brokerage Company. That corporation filed income tax returns for itself and its affiliates for 1925 and 1926 and the petitioners seek to review tax deficiencies attributed to them by the Commissioner, which the Board of Tax Appeals has affirmed. . . .

"On June 30, 1925, the United Brokerage Company purchased for $3,414,345.63 in cash all the capital stock of Artemas Ward, Inc., [a New York corporation] that was

issued and outstanding, consisting of 4,964 shares of no par value. . . .

"On December 31, 1925, pursuant to a plan of reorganization, Artemas Ward, Inc. (N. Y.) transferred to Artemas Ward, Inc. (a Delaware corporation), in exchange for 100 shares of stock of the latter company of no par value, all its assets, then of a net book value of $1,246,-920.07, with the exception of cash and accounts receivable aggregating $284,967.21; that is to say, the New York corporation transferred to the Delaware corporation assets of the value of $961,952.86. Immediately after the transfer, and on December 31, 1925, Artemas Ward, Inc. (N. Y.) distributed to United Brokerage Company the 100 shares of stock of Artemas Ward, Inc. (Del.) and accounts receivable amounting to $234,967.21. In December, 1926, United Brokerage sold the entire 4,964 shares of Artemas Ward, Inc. (N. Y.) for $49,640. That stock had cost the United Brokerage $3,414,345.63 and the total must be apportioned between the 100 shares of the Delaware corporation (which it still owns) and the 4,964 shares of Artemas Ward, Inc. (N. Y.) in order to determine the loss suffered by the United Brokerage Company through its sale of the 4,964 shares at $49,640.

.        .        .        .        .

"Upon the reorganization, the New York corporation had left among its assets, valued at $1,246,920.07, accounts receivable and cash aggregating $284,967.21, or approximately 22.85% thereof, after $961,952.86 had been transferred to the Delaware Company. Under Art. 1599 (2) [as amended, *infra*,] the portion of $3,414,345.63 paid by the United Brokerage Company for the stock of Artemas Ward, Inc. (N. Y.) represented by that stock after the reorganization was $780,303.97. If from this be deducted $234,967.21 accounts receivable and the $49,640 realized from the sale in December, 1926, there

would be a loss of $495,696.76. This loss the Commissioner allowed in assessing the income tax for 1925. The second point raised on this appeal is whether the loss, for the year 1926, to which the United Brokerage Company and its affiliates were entitled, was only the sum of $495,696.76 or was the sum of $2,167,785.56 which would arise, through deducting from $3,414,345.63, (the cost of the stock of the New York company) the value at the time of the reorganization of the Delaware stock, which was $961,952.86 and $234,967.21 realized from accounts receivable and $49,640 realized from sale of the 4,964 shares."

It thus appears, the New York company having parted with all its assets except $50,000 in cash, that the assets behind the 4,964 shares when the 100 share distribution was made consisted of only that sum, while the 100 shares of the Delaware company stock was represented by the transferred assets of the New York company of the value of $961,952.86. The sale of the 4,964 shares brought $49,640; and the simple question to be determined is what method for the purposes of taxation should be employed to determine the loss in respect of the 4,964 shares under the Revenue Act of 1926, § 204 (a) (9), c. 27, 44 Stat. 9, 14, 15. That section provides that the basis for determining the gain or loss from such sale shall be the cost of the property, except that—

"(9) If the property consists of stock or securities distributed after December 31, 1923, to a taxpayer in connection with a transaction described in subdivision (c) of section 203,* the basis in the case of the stock in

---

*Sec. 203 (c) provides: "If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized."

respect of which the distribution was made shall be apportioned, under rules and regulations prescribed by the Commissioner with the approval of the Secretary, between such stock and the stock or securities distributed; . . ."

At the time of the reorganization, Article 1599 of Treasury Regulations 69, which had been promulgated on August 28, 1926, was in force. Petitioners invoke subdivision 2 of that regulation which provided:

"Where the stock distributed in reorganization is in whole or in part of a character or preference materially different from the stock in respect of which the distribution is made, the cost or other basis of the old shares of stock shall be divided between such old stock and the new stock in proportion, as nearly as may be, to the respective values of each class of stock, old and new, at the time the new shares of stock are distributed, and the basis of each share of stock will be the quotient of the cost or other basis of the class with which such share belongs, divided by the number of shares in the class. *The portion of the cost or other basis of the old shares of stock to be attributed to the shares of new stock shall in no case exceed the fair market value of such shares as of the time of their distribution.*" (Italics added.)

April 3, 1928, this regulation was amended by striking from it the italicized portion. The taxpayer contended that its loss should be computed in accordance with the original regulation. This would have resulted in an allocation to the 4,964 shares of the New York corporation of $2,452,392.77; and, after making certain deductions, the allowable loss, as already appears, would have been something over $2,000,000. The commissioner, however, proceeding in strict accordance with the amended regulation, determined the amount of loss to be $495,696.76. Without pursuing the matter in further detail, it is enough to say that the case turns entirely upon the ques-

tion whether the loss was to be determined in accordance with the original or the amended regulation. If in accordance with the former, the taxpayer is right; if in accordance with the latter, the commissioner is right. The court below held that the amended and not the original regulation furnished the applicable rule, and affirmed the determination of the Board of Tax Appeals, which in turn had sustained the commissioner. We agree with that view.

In determining a loss, the statute requires that the basis shall be "apportioned" between the old and the new stock. To apportion is to "divide and assign in just proportion," "to distribute among two or more a just part or share to each," *Fisher* v. *Charter Oak Life Ins. Co.,* 14 Abb. N. C. 32, 36, albeit, a division may be just without necessarily being also an exactly equal division. The result of applying the original regulation here is to bring about an inequitable apportionment, contrary to the intent of the statute, and to credit the taxpayer with a loss essentially and greatly disproportionate. On the other hand, application of the amended regulation effectuates the legislative intent that the basis of apportionment between the old and the new stock shall result in a fair and just division.

The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law—for no such power can be delegated by Congress—but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. *Lynch* v. *Tilden Produce Co.,* 265 U. S. 315, 320–322; *Miller* v. *United States,* 294 U. S. 435, 439–440, and cases cited. And not only must a regulation, in order to be valid, be consistent with the statute, but it must be reasonable.

*International Ry. Co.* v. *Davidson,* 257 U. S. 506, 514. The original regulation as applied to a situation like that under review is both inconsistent with the statute and unreasonable.

The contention that the new regulation is retroactive is without merit. Since the original regulation could not be applied, the amended regulation in effect became the primary and controlling rule in respect of the situation presented. It pointed the way, for the first time, for correctly applying the antecedent statute to a situation which arose under the statute. See *Titsworth* v. *Commissioner,* 73 F. (2d) 385, 386. The statute defines the rights of the taxpayer and fixes a standard by which such rights are to be measured. The regulation constitutes only a step in the administrative process. It does not, and could not, alter the statute. It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand.

*Judgment affirmed.*