AMERICAN FOUNDATION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88664. Promulgated September 12, 1939.

*George M. Naus, Esq.,* and *N. L. McLaren, C. P. A.,* for the petitioner.

*T. M. Mather, Esq.,* for the respondent.

OPINION.

HARRON: In computing its "undistributed adjusted net income" under section 351 of the Revenue Act of 1934,[1] for the purpose of determining its surtax liability as a personal holding company, the petitioner deducted the amount of $157,529.90, being the total of payments made during 1934 on an indebtedness which had been reduced to judgment on July 16, 1931, as "Amounts used or set

---

[1] SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES.

(a) IMPOSITION OF TAX.—There shall be levied, collected, and paid, for each taxable year, upon the undistributed adjusted net income of every personal holding company a surtax equal to the sum of the following:

    *        *        *        *        *        *

(b) DEFINITIONS.—As used in this title—

    *        *        *        *        *        *

(2) The term "undistributed adjusted net income" means the adjusted net income minus the sum of:

    *        *        *        *        *        *

(B) Amounts used or set aside to retire indebtedness incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness; * * *

aside to retire indebtedness incurred prior to January 1, 1934" pursuant to subsection (b) (2) (B) of section 351.

The respondent determined that the amount involved did not constitute an allowable deduction under section 351, and in particular under article 351–4 of Regulations 86,[2] upon the ground that it represented payment of a "commercial loan." In article 351–4 of Regulations 86, the term "indebtedness" as used in subsection (b) (2) (B) of section 351 of the Revenue Act of 1934, was restricted in meaning to "bonds, debentures, or similar obligations * * * for the purpose of raising capital." No such restriction or limitation in connotation of the term is contained in the statutory provision involved. That it was not the intention of Congress to so limit the term appears from Report No. 558 of the Committee on Finance, 73d Cong., 2d sess., p. 15, wherein it is stated:

* * * Considerable hardship has been avoided by permitting the deduction from the adjusted net income of a reasonable amount used or set aside to retire indebtedness incurred prior to January 1, 1934. This will substantially and properly relieve personally owned corporations which have *outstanding bonds or other indebtedness* that must be met from current earnings before distributions can be made. [Emphasis supplied.]

Although section 351 (b) (2) (B) of the Revenue Act of 1936 remained the same as the corresponding section of the 1934 Act,

---

[2] ART. 351–4. *Amounts used or set aside to retire indebtedness incurred prior to January 1, 1934.*—If, pursuant to a bona fide plan for the retirement of its bonds, debentures, or similar obligations representing indebtedness incurred prior to January 1, 1934, for the purpose of raising capital (or assumed prior to that date in connection with the acquisition of capital assets by which such indebtedness is secured) the taxpayer—

(1) retires during the taxable year an amount of such indebtedness, or
(2) establishes a sinking fund or reserve for the retirement of such indebtedness during the taxable year, and sets aside in such fund or reserve an amount for the retirement of such indebtedness—

in determining the undistributed adjusted net income for the taxable year, a deduction from the adjusted net income is allowable in a reasonable amount in respect of the amount so paid or set aside in such fund or reserve during the taxable year.

The amount allowable as a deduction in any case must be reasonable, considering the nature, purposes, scope, conditions, amount, maturity, and other terms of the indebtedness. No deduction is allowable unless it appears, either from the covenants of the obligations or from a recognized business and accounting practice respecting the retirement of such indebtedness, that provision for retirement must be made out of earnings for the taxable year before distribution of such earnings may be made. The reasonableness of the deduction shall be determined by existing conditions known at the close of the taxable year. The fact that amounts have not been used or set aside in prior years will not entitle the taxpayer to deduct in any taxable year a greater amount than would otherwise be allowable. Amounts paid or set aside to discharge current liabilities for expenses, salaries, wages, taxes, interest, the purchase of any property for resale, dividends, balances due brokers, bank or other commercial loans, or any other current liability (whether represented by negotiable instruments, balances on account, or otherwise) do not constitute allowable deductions. This is true as respects liabilities which are payable at the convenience of either the debtor or the creditor, or on the demand of either.

No deduction will be permitted under this article with respect to any item for which a deduction is otherwise allowable under Title IA or Title I of the Act or under any applicable prior income tax Act.

*       *       *       *       *       *       *

Congress in the Revenue Act of 1937 changed the corresponding section of that act (section 355 (b)) to read as follows:

(b) Amounts used or irrevocably set aside to pay or to retire *indebtedness of any kind* incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness. [Emphasis supplied.]

Both the Committee on Ways and Means and the Committee on Finance refused to carry out the recommendation of the Joint Committee on Tax Evasion and Avoidance to eliminate in the 1937 Act the deduction allowed in section 351 (b) (2) (B) of the 1934 Act in arriving at undistributed adjusted net income of a personal holding company, for the following reasons:

* * * While recognizing the reasons which impelled the joint committee to make this recommendation, your committee feels, from further study of the question, that the denial of this deduction would cause hardship in numerous cases where due to the particular circumstances of the corporation, a dividend distribution cannot be made because of a necessity for legal reasons of using the earnings and profits to discharge the debts. Moreover, any loss of revenue caused by the continued allowance of this deduction cannot increase, since indebtedness incurred after 1933 cannot be used as a basis for the deduction. * * * [3]

In November 1937, article 351–4 of Regulations 86 (footnote No. 2, *supra*) was amended in Treasury Decision No. 4777, C. B. 1937–2, p. 197. Therein the term "indebtedness" was defined as "an obligation, absolute and not contingent, to pay, on demand or within a given time, in cash or other medium, a fixed amount."

The authority given to the Secretary of the Treasury to make rules and regulations for the administration of the revenue laws does not include the power to alter or amend such laws. *Morrill* v. *Jones*, 106 U. S. 466. A regulation to be valid must be consistent with the statute and also reasonable. A regulation, which "operates to create a rule out of harmony with the statute, is a mere nullity." *Manhattan General Equipment Co.* v. *Commissioner*, 297 U. S. 129. Where a regulation does not carry into effect the will of Congress as expressed in a statute, a subsequent amended regulation, which does so, becomes "the primary and controlling rule in respect to the situation presented." *Manhattan General Equipment Co.* v. *Commissioner, supra.*

On brief the respondent admits that the change made by Congress in the 1937 Act and the explanation of such change as contained in Report No. 1242, of the Committee on Finance, *supra*, indicate strongly the disapproval of Congress of the administrative construction of section 351 (b) (2) (B) of the Revenue Act of 1934 contained

---

[3] Report No. 1546, Committee on Ways and Means, 75th Cong., 1st sess., p. 11.
Report No. 1242, Committee on Finance, 75th Cong., 1st sess., p. 13.

in article 351–4 of Regulations 86, and that consequently it is probable that the restrictions in such regulation, limiting the deduction to bonds or debentures, is subject to revision. He contends, however, that an indebtedness to be deductible under section 351 (b) (2) (B), *supra*, must be "reasonable with reference to the size and terms of such indebtedness."

The purpose of section 351, enacted for the first time in the Revenue Act of 1934, was to prevent tax avoidance by means of an "incorporated pocket book", i. e., the formation of a personal holding company by an individual for the purpose of turning over to it, in exchange for its stock, his personal holdings in stock, bonds and other income-producing property. By so doing individuals had theretofore escaped payment of surtax on income which without the intervention of such corporations would have been payable by them individually. (See footnote No. 3, *supra*.)

The evidence discloses that the petitioner was organized to acquire, rehabilitate, and operate the Murchie mine and other property. It was not until about the latter part of 1929 that the mine was in condition to operate with any degree of success. Up to that time it had not been able to accumulate any surplus income. How successful the operations were thereafter, the record fails to disclose. However, the testimony is that the income from the mine was never enough at any time to cover the amounts expended for its development and operation. In any event it was deemed advisable to sell all of the assets of the petitioner in December 1931, at which time there was outstanding, in addition to other indebtedness, the indebtedness herein involved of over $315,000, plus interest and costs, which it was required to pay. In 1932 the evidence discloses that the petitioner had income of $73,089.25, including dividends from the Empire Star Mines Co., Ltd., of $25,750, and also received $60,000 under the contract of sale. In 1933 it received dividends from the Empire Star Mines Co., Ltd., of $20,395 and $44,707.53 on its contract of sale. In 1934 it received dividends of $90,000 and realized a profit of $95,000 on the sale of 5,000 shares of stock of the Empire Star Mines Co., Ltd., received under the contract of sale. The balance sheet in its 1934 return shows a deficit of $975,654.74 as of December 31, 1934. So far as the record shows it had no surplus available for dividends in 1934 or prior thereto.

Petitioner did not become a personal holding company as defined in section 351 (b) (1) of the Revenue Act of 1934 until January 1, 1932, upon the sale of all its assets. Prior to that time the indebtedness involved had been reduced to judgment. The judgment did not provide any time for payment. The postponement of execution on a judgment is not unusual. Payments were made on the judg-

ment with reasonable promptness whenever cash was available for that purpose.

Upon all the evidence it is held that the indebtedness of the petitioner to Van Loben Sels was an indebtedness incurred prior to January 1, 1934, and that the amount paid in 1934 was reasonable with reference to the size and terms of such indebtedness within the meaning of section 351, *supra*, and article 351–4 of Regulations 86, as amended by Treasury Decision No. 4777, *supra*. The petitioner is therefore entitled to the deduction claimed.

*Decision will be entered for the petitioner.*