SOL LUIS DESCARTES, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; SUCESIÓN DE J. SERRALLÉS, Intervener. THE SAME, Petitioner, *v.* THE SAME, Respondent; DESTILERÍA SERRALLÉS, INC., Intervener. THE SAME, Petitioner, *v.* THE SAME, Respondent; SUCESIÓN DE J. SERRALLÉS, Intervener.

Nos. 237, 239 and 240. Argued May 11, 1950.—Decided May 26, 1950.

*Vicente Géigel Polanco, Attorney General,* and *J. A. García Malpica, Assistant Attorney General,* for petitioner. *Vicente Zayas Pizarro* for interveners.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Because of the similarity of the three above-entitled cases they were heard jointly before this Court. In the first case, Sucesión J. Serrallés imported a coil on May 16, 1946, for the magnetic starter of the electric motor of an electric saw which is installed and is utilized in the carpentry shop of

the petitioner's industrial plant. In the second, Destilería Serrallés, Inc., imported a conveyor on January 29, 1946, which is installed and utilized in a warehouse used for storing the finished product ready for sale; and in the third, Sucesión J. Serrallés imported in October, 1946, an electric radial drill and a vertical electric lathe which are installed in the repair shop of its industrial plant. The question for decision in all three cases is whether the afore-mentioned apparatuses are subject to the payment of excise taxes, pursuant to the provisions of § 16 of Act No. 85 of August 20, 1925 (Sess. Laws, pp. 584, 590) as amended, or whether according to the provisions of § 16-B of the said Act as it was added to the Internal Revenue Law by Act No. 77 of May 9, 1944 (Sess. Laws, pp. 166, 168), such apparatuses are tax exempt because they are essential for the establishment and operation of industrial plants.

Shortly after the importation [1] of said apparatuses, the Treasurer of Puerto Rico requested the interveners to pay the tax thereon. Alleging that the same were exempted they paid under protest [2] and appealed to the Tax Court. The latter, after hearing both parties, rendered separate decisions stating that the coil as well as the conveyor, the electric radial drill and the vertical electric lathe were exempt under § 16-B of the Act.

■ In the case of the coil, said court decided that according to the evidence, the coil acts by electromagnetic induction to complete a circuit through which flows the current needed to operate a motor which causes a saw to move; that said coil produces energy to facilitate the closing of the interrupter that completes the circuit; that the said saw, which is circular and adjusted to turn at planes of various angles, is part of the machinery used in the carpentry of the Cen-

---

[1] See § 39 of Act No. 85 of 1925, as it has been amended.

[2] See Act No. 8 of 1927 (Sess. Laws, p. 122) as amended by No. 17 of November 21, 1941 (Spec. Sess. Laws, p. 54), the same as Act No. 229 of May 10, 1949 (Sess. Laws, p. 704).

tral Mercedita; that it is used to cut pieces, among other things, for wooden frames which are subsequently used for casting iron and to repair machines and equipment belonging to the company and for pieces of wood utilized in any carpentry work of the sugar mill; and that if the saw were not used the wood would have to be sawed by hand, which would require more time and would be more expensive.

In connection with the conveyor, the Tax Court decided that the latter is used exclusively inside the industrial plant of the intervener Destilería Serrallés, Inc. at such times when there is need to move empty bottles to the place where they are filled with alcohol or rum or when after being filled they must be carried to the warehouses to be taken from there to the warehouse gates for delivery to the trucks which carry them out of the establishment; that the intervener has manufactured on certain years as many as 800,000 cases of rum; that if said conveyor were eliminated the work done at the intervener's establishment would be more difficult and that if the conveyor were not used for such purposes the pace of production in the corporation's industry would suffer greatly.

And as to the electric radial drill and the vertical electric lathe, the respondent court decided, concerning the first, that it consists of an upright steel column with a horizontal lever that has a frame or head for holding drills; that it is moved by an electric motor and is used to bore holes from one half to two and one half inches in diameter, on any spare part or article of the factory; that the drill is used daily, but much more often outside the grinding season, and the machinery of the sugar mill has to be repaired; and that the vertical lathe consists of a round horizontal frame 42 inches in diameter in which the work is held and rotates about its axis, while it is formed or cut round by the knife or sharp tool which is adjusted to it; it is used for turning or revolving any piece or object, as for example, a journal bearing.

At the request of the Treasurer we issued a writ of certiorari to review the decision of the Tax Court in each one of the cases. Petitioner's main contention is that said court erroneously applied § 16–B of the Internal Revenue Law. This Section, in its pertinent part, provides:

"There shall be exempt from the payment of the excises imposed by this Act all machinery, apparatus, or equipment that may be essential for the establishment and operation of industrial plants."

In *Caparra Dairy* v. *Tax Court*, 67 P.R.R. 292, in construing the preceding Section we defined what was meant, for the purposes thereof, by the term machinery, apparatus or equipment, and in our judgment the devices involved herein are included in those terms as defined in said case. We now turn to decide if they are essential for the establishment and operation of the intervener's industrial plants.

In arguing the three cases, however, the petitioner maintains that according to § 4 (*d*) of Regulations No. 52 promulgated by the Treasurer of Puerto Rico on August 22, 1944, in accordance with the provisions in § 16–B, the essentiality of any machinery, apparatus or equipment should be construed in relation to the factory equipment essentially productive of the industry, but not in relation to the industry in all its economic stages.[3] However, § 16–B

---

[3] Section 4 (*d*) of Regulations No. 52, *supra*, reads:

"The essentiality should be understood in connection with the 'establishment' (as this word is explained in the preceding paragraph) and the operation of that machinery, apparatus or equipment which is used directly in the gradual transformation of the product in the industries of continual processes (§ 4 (*a*) (1), *supra*), either analytic or synthetic; or that which is used directly in the manufacture and installation of the additions to finished products (§ 4 (*a*) (2), *supra*); or that used in the manufacture of different components that are finally assembled or combined among them in order to constitute a finished product, the parts preserving their structural individual identity; or in the manufacturing of components which are finally blended in a different product, losing said identity.

"*The essentiality should be understood, then, in relation with the factory equipment essentially productive of the industry not in relation to the industry in all its economic phases.*" (Italics ours.)

does not say that in order that any machinery, apparatus or equipment essential to the establishment and operation of industrial plants be exempted from taxation, it must be connected with the factory equipment of the industry. It is true that the aforesaid § 16–B was amended by Act No. 436 of May 14, 1947 (Sess. Laws, p. 908) and that according to the amending Act the exemption is applicable only to the machinery of the factory stage of production of the industrial process.[4] It is also true that the frequently mentioned § 16–B was likewise amended by Act No. 195 of May 7, 1949 (Sess. Laws, p. 614) and that in the second proviso of the latter it was again made evident that the exemption would be understood to be applicable only to the machinery of the factory stage of production in the industrial process.[5] But neither the 1947 nor the 1949 amendment is applicable to these cases for in tax matters the applicable Act is that which prevails at the time of the taxable event. As the

---

[4] Section 16–B, as amended by Act No. 436 of 1947, provides in its *Provided* before last:

"*Provided, finally*, That this being an exemption which covers the essential machinery for the establishment and operation of industrial plants, *it shall be construed as applicable only to the machinery of the factory stage of production of the industrial process, having to do with raw materials from the beginning of the manufacturing process until completion thereof, including packing and labeling of the product; but it shall not cover the machinery, apparatuses, equipment, or vehicles used in the administrative or commercial stage of the industry; . . .*" (Italics ours.)

[5] The second *Proviso* of Act 195 of 1949 reads:

"*Provided finally, likewise*, That this being an exemption which covers the essential machinery for the establishment of industrial plants, *it shall be construed as applicable only to the machinery of the factory stage of production of the industrial process, having to do with raw materials from the beginning of the manufacturing process until the completion thereof*, but also including the machinery, trucks, or hoisting units exclusively and permanently used in the transportation of raw material and semiprocessed articles on the premises of the industrial plant, as well as the equipment used in the packing and labelling of the product and in the preservation of the latter or of the raw material in the case of perishable articles; but it shall not cover ·the machinery, apparatuses, equipment, or vehicles used in the administrative, distributional or commercial stage of the industry." (Italics ours.)

apparatuses involved herein were introduced in this Island in 1946, when § 16–B as it was added to the Internal Revenue Law by Act No. 77 of 1944 was in force, we shall resort to it in order to determine whether the apparatuses in question are entitled to the exemption mentioned therein. As we have seen already, § 16–B, as it read in 1944, makes no reference to the factory stage of an industry. It clearly exempts from taxes any machinery, apparatus or equipment that may be essential for the establishment and operation of industrial plants. It was Regulation No. 52, we repeat, which provided that the essentiality should be understood in relation to the factory equipment of production in the industry. Although the aforesaid § 16–B authorizes the Treasurer of Puerto Rico to fix the regulations necessary to enforce the provisions of said Section, nevertheless, a regulation must, to be valid, be consistent with the statute that authorizes its promulgation, but it is a nullity if it is in conflict therewith. *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250, 256; *Buscaglia* v. *Tax Court, Crown Beverages, Int.*, 67 P.R.R. 53, 61; *Manhattan Co.* v. *Commissioner*, 297 U. S. 129, 134. As § 16–B does not say in any way that in order that a machinery, apparatus or equipment which is essential for the establishment and operation of industrial plants be exempt from tax it should be part of the factory equipment of the industry, § 4 of Regulations No. 52, as approved on August 24, 1944, exceeded the requirements of the Act authorizing its promulgation and it is, therefore, null and void as to its application to situations arising under Act No. 77 of 1944.

■ Section 16–B, as we have seen, was amended by the aforesaid Acts of 1947 and 1949. Since it is said therein that it being an exemption which covers the essential machinery for the establishment and operation of industrial plants, it should be construed as applicable only to the machinery of the factory stage of production of the industrial process, the Treasurer maintains that the legislator's spirit was al-

ways to grant exemption solely and exclusively to the apparatus, machinery or equipment essential for the establishment and operation of industrial plants in its factory stage. We disagree. The Act of 1944 contains such a clear and broad language that it shows definitely that the legislative intent was to exempt from the payment of taxes all machinery, apparatus or equipment essential for the establishment and operation of industrial plants. The 1947 and 1949 amendments, far from convincing us that when § 16–B was approved in 1944 the purpose was to exempt such apparatus, machinery or equipment, provided they were used in the factory stage of an industry, strengthen our conclusion that according to the original Act of 1944 it was not required that the apparatus, machinery or equipment be utilized in connection with the factory stage of an industry and that it was precisely due to a subsequent change of criterion, shown by the afore-mentioned amendments, that the Legislative Assembly believed that in order to enjoy said exemption it should be required that the same be utilized in the factory stage of the industry.

According to Crawford, Statutory Construction, Interpretation of Laws, p. 618, § 304, "Indeed, the mere fact that the legislature enacts an amendment is of itself an indication of an intention, as a general rule, to alter the pre-existing law." Also see Sutherland, Statutory Construction, vol. 1, third ed., p. 412, § 1930. The 1947 and 1949 amendments show nothing but the purpose of restricting the exemption.

On the other hand, the Treasurer likewise argues that since it concerns a tax exemption, it should be construed restrictively. We agree with that statement. See *National Hats Co.* v. *Sancho*, 65 P.R.R. 226; *Buscaglia, Treas.* v. *Tax Court, Rubert Hnos. Union, Int.*, 68 P.R.R. 34, and *Central Coloso* v. *Tax Court*, 70 P.R.R. 62. However, this doctrine is not applicable when the legislative intention and

purpose are, like in this case, unmistakably clear. *Buscaglia* v. *Tax Court, Crown Beverages, Intervener, supra.*

Like the Tax Court, we believe that the coil, the conveyor, the electric radial drill and the vertical lathe constitute machinery, apparatus or equipment essential for the operation of the industrial plants belonging to the intervener herein. The coil, the drill and the lathe are essential, perhaps indispensable, in its repair shop, for without them the operation and production of its industries would be greatly impaired. Besides, the conveyor is also essential for the operation of the distillery, because it contributes to accelerate the pace of production and without its use it could hardly take efficient care of the bottling, storage and delivery of its product.

The above statements are in nowise contrary to our ruling in *Central Coloso* v. *Tax Court, supra.* We decided therein that the equipment used by an industrial plant for moving raw material to the plant is not considered equipment essential for the establishment and operation of an industrial plant and therefore that such equipment does not fall under the exemption.

The judgments will be affirmed.

Mr. Justice Snyder did not participate herein.

Mr. Justice Negrón Fernández took no part in the decision of this case.