In the Matter of B. HOFFMAN MILLER, Petitioner, against JOSEPH D. McGOLDRICK, as State Rent Administrator, Respondent.

Supreme Court, Special Term, Queens County, October 18, 1950.

*S. S. Goldsmith* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (Beatrice Shainswit* of counsel), for respondent.

COLDEN, J. Application, pursuant to article 78 of the Civil Practice Act, for an order reviewing the determination of the State Rent Administrator denying petitioner's protest against subdivision 1 of section 21 of the Rent and Eviction Regulations promulgated by the respondent.

Petitioner contends that said regulation conflicts with the law (L. 1946, ch. 274, as amd. by L. 1950, ch. 250), which created the Temporary State Housing Rent Commission and under which respondent derives his authority to make any regulations at all. If this be the case, the regulation, of course, is invalid. (*Manhattan Co.* v. *Commissioner of Internal Revenue,* 297 U. S. 129, 134.)

Section 4 of the Residential Rent Control Law provides that the commission shall establish maximum rents for housing accommodations at the levels prescribed on March 1, 1950, by the Federal or local rent laws. " Where there were different maximum rentals prescribed pursuant to such laws ", the maximum fixed by the local law was to prevail. By the regulation here attacked, the commission has provided that the maximum fixed by local law shall prevail only if it was lower than that fixed by the Federal law.

The *literal* conflict between the law and the regulation is apparent. Respondent argues, however, that the regulation does not conflict with the intent of the Legislature.

It is true that the legislative intent is the controlling principle in the construction of statutes. '' However, ' that intention is first to be sought from the words employed, and if the language is unambiguous, the words plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation.' (*Settle* v. *Van Evrea,* 49 N. Y. 280, 281.) '' (*Town of Putnam Valley* v. *Slutzky,* 283 N. Y. 334, 343.)

Assuming, however, that extrinsic aids to interpretation were proper in this case, they do not support respondent's position. At page 5 of his brief, respondent says: '' The entire and admitted purpose of the Act was to stop the host of *federal* rent increases granted in this state during the past two years.'' (Italics supplied.) The statute, as written, would stop *Federal* increases; the regulation would, in addition, abolish local increases. The regulation, therefore, cannot be said to further the '' entire and admitted purpose of the Act '' if, as respondent contends, it was to stop *Federal* increases.

Respondent argues further that the purpose of the *local law* was also to stop rent increases. But we are here concerned with the intent of the *State* Legislature in enacting the State law. We cannot divine that intent by considering what was in the mind of the city council when it enacted the *local* law.

Subdivision 1 of section 13-a of the law in question provides in part as follows: '' The legislature hereby finds that a substantial number of tenants in this state may be subject to potential liability arising from certain provisions of the *federal* housing and rent act of nineteen hundred forty-seven, as amended, pursuant to which increases in maximum rentals were authorized '', (Italics supplied.)

The report of the Joint Legislative Temporary Commission to Study Rents and Rental Conditions which recommended the act states:

'' The Commission has observed with misgivings the disintegration of rent controls under the emasculated *federal* Housing and Rent Act of 1949. The meagre protection accorded tenants under that Act was diminished through failure to support even the abbreviated efforts at enforcement by the Housing Expediter by failure or refusal by the Congress to appropriate sufficient funds.

'' The feeble  *  *  *  efforts to administer or enforce the law by the Office of Housing Expediter were viewed with sus-

picion by the Commission and by tenants when more than 13,000 retroactive so-called 'fair net operating income' increases were granted suddenly some of which were dated back approximately two years.'' (Italics supplied.)

Evident throughout all of these quotations is the legislative intent to curb *Federal* increases, not to rescind such increases as may have been allowed under local laws. This intent was clearly stated in the act itself. It does not lie within the power of respondent to nullify that intent and to engraft upon the law, under the guise of a regulation, a policy which was neither expressed nor intended.

The application is granted. Settle order on notice.