## DISTRICT OF COLUMBIA

v.

## GREENWAY, Inc.

### No. 1440.

Municipal Court of Appeals for the District of Columbia.

Argued March 1, 1954.

Decided March 24, 1954.

Rehearing Denied April 28, 1954.

Harry L. Walker, Asst. Corporation Counsel, Washington, D. C., with whom Vernon E. West, Corporation Counsel, Chester H. Gray, Principal Asst. Corporation Counsel, and Milton D. Korman, Asst. Corporation Counsel, Washington, D. C., were on the brief, for appellant.

Harvey H. Holland, Jr., Washington, D. C., with whom James E. Artis, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

The question for decision is whether the District of Columbia Commissioners acted in accordance with a governing statute in fixing· annual apartment house license fees in 1947.

Greenway, Inc., owner of 72 small, garden-type, walk-up apartments sued the District of Columbia to recover fees at the rate of $15 per building which it had paid under protest. The trial court, in a written opinion, held that the Commissioners had not complied with the procedure fixed by Congress for establishing the fees, and therefore, found for plaintiff. The District appeals.

The statute, which expressly repealed the former licensing provisions,[1] authorized the Commissioners "to classify, according to use, method of operation, and size, buildings containing living or lodging quarters of every description, to require licenses for the business operated in each such building as in their judgment requires inspection, supervision or regulation * * and to fix a schedule of license fees there-

1. Code 1940, §§ 47–2328 through 47–2330.

for in such amount as, in their judgment, will be commensurate with the cost to the District of Columbia of such inspection, supervision or regulation * * *." Act of July 22, 1947, § 3, 61 Stat. 402, Code 1951, § 47–2328.

Prior to the passage of the act, a special committee appointed by the Commissioners had for some three years been studying the license fee system. After the passage of the 1947 act this committee reported to the Commissioners that it would be unable to recommend a classification of buildings and a new schedule of fees in time for the licensing year 1947 which began November 1, 1947. The committee recommended that the same fees charged in former years be again charged in 1947.

Pursuant to this recommendation, the Commissioners on September 22, 1947, issued their order No. 301,260/5:

"1. Owners or managers of hotels shall pay a license fee of $18. per annum. * * *

"2. Owners or managers of apartment houses shall pay a license fee of $15. per annum: * * * Within the meaning of this section an apartment house shall be a building in which rooms are occupied in suites by three or more families.

"3. Owners or managers of lodging houses shall pay a license fee of $15. per annum. Within the meaning of this section a lodging house shall be a building in which sleeping quarters are provided to accomodate ten or more transients."

This order is identical with the older law above referred to, which had been expressly repealed by the new act. On its face the 1947 order was inconsistent with the new 1947 law, and did not manifest even an attempted compliance therewith. The new law commanded that the Commissioners take three steps as a foundation for their determination of what license fees to impose: (1) classification of buildings according to use, method of operation, and size; (2) determination of which of the buildings so classified require inspection, supervision or regulation; and (3) establishment of license fees for those buildings commensurate with the cost of inspection, supervision, or regulation. Thus, Congress obviously contemplated a schedule of fees based on a *classification* of all buildings to be licensed. But the fees fixed by the Commissioners' order were not based on any classification "according to use, method of operation, and size," or indeed on any classification. The Commissioners acted only upon their knowledge that the older fees had not met the cost of inspection, supervision, or regulation. This, in view of the plain Congressional mandate, was not enough.

We think it must be held that without some classification, the Commissioners could not establish a valid schedule of fees. We need not consider what the legal situation would be if the Commissioners had adopted a temporary, stopgap classification. In proceeding without any classification they ignored the terms circumscribing the power delegated by Congress. Nothing can be clearer than the duty of all those to whom authority is delegated to keep within the bounds of that authority. Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733; Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528; Hendelberg v. Goldstein, D.C.Cir., 211 F. 2d 428.

Where a statute "directs in precise or definite terms the manner in which certain corporate acts are to be executed * * * such specification must be substantially followed. The direction of definite and certain method of procedure in the grant of power to the municipal authorities, it is usually held, excludes all other methods by implication of law." 2 McQuillin, Municipal Corporations § 10.27 (3rd edition).

The District argues, in part, that the owner did not prove the fee to be excessive. But the owner does not challenge the amount of the fee: it is the first requirement of the statute, classification, which was challenged; and failure to classify was proved beyond question.

Nor is there merit in the contention that the trial judge in effect substituted his judgment for that of the Commissioners. The trial judge made no attempt to determine what would have been a proper fee or a proper classification. The only question decided was that the Commissioners had not complied with the statute because of their failure to make any classification.

In the briefs there is some discussion as to whether the statute is a revenue measure or merely regulatory. But whatever the purpose of the statute, no rule of construction can alter the unescapable fact that it was not obeyed.

Affirmed.