**UNITED STATES of America,
Appellant,**

v.

**525 COMPANY, Appellee.**

No. 21857.

United States Court of Appeals
Fifth Circuit.

March 22, 1965.

Robert L. Waters, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Barefoot Sanders, U. S. Atty., Dallas, Tex., Melva M. Graney, Atty., Dept. of Justice, Washington, D. C., Stanley McMurry, Asst. U. S. Atty., of counsel, for appellant.

Harry C. Weeks, Frank B. Appleman, Fort Worth, Tex., Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel, for appellee.

Before BROWN and BELL, Circuit Judges, and HUNTER, District Judge.

HUNTER, District Judge.

This is an appeal by the United States from a judgment of the district court awarding taxpayer a refund of corporate and personal holding company taxes. The material facts, all of which are stipulated, appear in the district court's opinion, reported in 230 F.Supp. 803.

The Technical Amendments Act of 1958 (26 U.S.C.A. §§ 1371–1377) amended the Internal Revenue Code of 1954 by adding Subchapter S dealing with small business corporations. The provisions of that subchapter permit certain business corporations, upon filing a proper election, to be taxed after the fashion of a partnership; that is, the corporate entity is by-passed for tax purposes and the shareholders are taxed on their ratable shares of the corporate income. Plaintiff (taxpayer), 525 Company, qualified as such a corporation, and filed an appropriate election to which its two shareholders and their spouses consented. If this election continued in effect through the close of the 1962 taxable year, taxpayer's income tax liability should have been determined pursuant to Subchapter S.[1] But, the election to be taxed as a small business corporation terminates by operation of law if such corporation has gross receipts more than 20% of which is derived from personal

---

1. 525 Company filed an appropriate income tax return as a Subchapter S corporation, and its stockholders in their individual income tax returns for the calendar year 1962 duly reported as parts of their taxable incomes their ratable shares of the net income so reported.

holding company income, including inter alia, royalties (Sec. 1372(e) (5)), of the Internal Revenue Code of 1954.[2]

Taxpayer's net income for the taxable year in suit amounted to $1,087.68 and all of it was derived from an undivided interest in two oil payments.[3] Consequently, if oil payments are royalties within the meaning of the personal holding company provisions of the Internal Revenue Code, then the taxpayer's election was terminated by operation of law and it owed both corporate and personal holding company taxes. The issue quickly narrows: Did the revenue from the oil payments constitute receipts from royalties within the purview of Section 1372(e) (5) and Section 543(a) (8) of the Internal Revenue Code of 1954?

■ Taking the statute in light of its legislative and administrative history, we find nothing to indicate that Congress intended to include "oil payments" within the terms "royalties" or "mineral, oil or gas royalties." Contrawise, such history as has been presented to us appears to support taxpayer's contention. It must be presumed that in using terms undefined in the statute, Congress intended the words to have their natural, ordinary and familiar meaning. First National Bank of Cincinnati v. Flershem, 290 U.S. 504, 54 S.Ct. 298, 78 L.Ed. 465; United States v. Leslie Salt, 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441; United States v. Isham, 17 Wall 496, 21 L.Ed. 728. Both the dictionary definitions and the cases demonstrate that the term "royalty", as used with respect to oil and gas matters, refers to the landowner's royalty and not to oil payments. Sneed v. Commissioner, 33 B.T.A. 478; Twentieth Century Fox Film Corpora-

tion v. Tea, 286 F.2d 373 (5 C.C.A., 1961); Words and Phrases, Vol. 37A, 600–608 and pocket parts. Congress was conscious of the distinctions between the terms "royalties", "overriding royalties" and "oil payments" at the time the Revenue Act of 1934 was enacted. This is authoritatively established by the legislative history of the 1934 Act which reveals that the question arose as to whether certain types of overriding royalties would be included in the term "royalty". The report of the Conference Committee on the 1934 Act, 73rd Congress, Second Session, H.R. 1385, expressly stated:

> "As used in this section, the term 'royalty' is not intended to include overriding royalties received by the operating company." Seidman's Legislative History of Federal Income Tax Law, 1938–1861, page 399.

The proposition that there was a distinction for personal holding company tax purposes between royalties and oil payments was for many years recognized by the Internal Revenue Service. At the time T.D. 6308 was promulgated in September of 1958, Mertens, Law of Federal Income Taxation, in Vol. 7, Para. 40.07 (K) contained the following statement:

> "Since the Revenue Service holds that payments collected on in-oil payment rights, which are carved out of larger depletable interests in oil and gas in place, do not ordinarily qualify as royalty income for the purpose of determining personal holding company income, oil production payments collected on in-oil payment rights which were originally granted or reserved in a leasing transaction do not qualify as mineral, oil, or gas royalties."

---

**2.** Section 1372(e) (5), as noted by its caption, deals with "personal holding company income", including "royalties." Section 543 of the Internal Revenue Code of 1954 defines personal holding company income to include "mineral, oil or gas royalties." Both taxpayer and the United States agree that for the purposes of this case, the term "royalties" in Sec. 1372(e) (5) is equivalent to the term "mineral, oil or gas royalties" in Section 543.

**3.** The oil payments were created in 1955 when one Eugene Gill excepted the same from his assignment of certain oil and gas leases and related equipment. No other interests were retained by Gill when he assigned the leases and equipment. The taxpayer acquired its undivided interests from M. Morse and Company, Ltd. on June 29, 1962. Those oil payment reservations were assignable and of the conventional type.

This interpretation had been consistently followed by the courts as well as the Commissioner,[4] and Congress made no change until 1964, although the Code was re-enacted time and time again. This bespeaks congressional approval. In September of 1958 the Internal Revenue Service, in contrast to the position it had taken throughout the many years, declared that the term "mineral, oil or gas royalties" means all royalties, including production payments and overriding royalties. Explicit recognition that this attempt to characterize oil payments as royalties was a departure from prior Treasury practice is found in T.D. 6308 itself, which contained this language:

"(iii) The first sentence of subdivision (ii) of this subparagraph shall apply to overriding royalties received from the sublessee by the operating company which originally leased and developed the natural resource property in respect of which such overriding royalties are paid, and to mineral, oil, or gas production payments, only with respect to amounts received after September 30, 1958."

■■ Against the Treasury's prior long-standing and consistent administrative interpretation, its promulgation of September 30, 1958, as to how the statute should be construed cannot stand. Surely a contemporaneous construction by persons charged with the responsibility of setting the statute's machinery into motion should not be overturned except for very cogent reasons. Norwegian Nitrogen Prod. Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796.

This Court appreciates the fact that the Treasury has been upheld in many cases where it altered regulations. An examination of the controlling cases upholding the Treasury in such cases will show that they relate either to spheres in which the Congress has delegated special regulatory power to the Treasury or the Service, such as matters relating to depletion allowances, or which deal with items of deductions, but that in other cases where a substantial change is made in the incidence of the tax, the Supreme Court and this Court, as well as others, have held the attempted change invalid.

Appellant attempts to uphold the validity of T.D. 6308 by the assertion that prior to the promulgation of that regulation the Internal Revenue Service had not been fully cognizant of the nature of oil payments and their similarity to royalties. Be that as it may, it is nevertheless for Congress, not the Treasury, to make the change. T.D. 6308 constituted a plain administrative endeavor to amend the law as enacted by the Congress and to make it reach subjects and objects which the Congress had deliberately omitted. The effect of such an effort comes within the condemnation of the decisions of the Supreme Court. This is exemplified by Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959), where the Court stated:

"But the section contains nothing to that effect, and, therefore, to uphold this addition to the tax would be to hold that it may be imposed by regulation, which, of course, the law does not permit. United States v. Calamaro, 354 U.S. 351, 359, 77 S.Ct. 1138, 1143, 1 L.Ed.2d 1394; Koshland v. Helvering, 298 U.S. 441, 446–447, 56 S.Ct. 767, 769–770, 80 L.Ed. 1268; Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528."

Equally applicable is the Supreme Court's opinion in United States v. Leslie Salt Co., 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441 (1955) and this Court's opinions in United States v. Marett, 5 Cir., 325 F.2d 28 (1963); and United States v. Mississippi Chemical Company, 5 Cir., 326 F.2d 569 (1964).

4. Revenue Ruling 55–194, published in C.B. 1955–1, page 434; Kiesau Petroleum Co. v. Commissioner, 42 B.T.A. 69; Nemours Corporation v. Commissioner, 38 T.C. 585.

■ The trial court correctly determined that as applied to the facts of this case, the reserved oil payments were not receipts from royalties within the purview of Section 1372(a) (5) or Section 543(a) (8) of the Internal Revenue Code of 1954. The judgment is affirmed.[5]

---

5. Before the present case was decided by the district court, Congress, in 1964, added Section 543(b) (4) of the Code which defines "adjusted income from mineral, oil and gas royalties", as meaning "the gross income from mineral, oil and gas royalties including production payments and overriding royalties." But, this change was prospective. Senate Report No. 830, Part 2, 88th Congress, 2nd Session, page 250, stated:

"However, it has been brought to the attention of your committee that this interpretation of existing section 543 (a) (8) is disputed by some taxpayers. Your committee's amendment would make it clear that production payments and overriding royalties are to be treated as mineral, oil, and gas royalties under proposed section 543(b) (4). *This amendment is not intended to affect any case involving interpretations of section 543(a) (8) of existing law.*" (Italics supplied).