T.C. Memo. 2010-174

UNITED STATES TAX COURT

YARISH CONSULTING, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1611-09R.                    Filed August 4, 2010.

Harold A. Chamberlain, for petitioner.

Roger P. Law and Shawn P. Nowlan, for respondent.

MEMORANDUM OPINION

KROUPA, Judge:  This is a declaratory judgment action under section 7476[1] that petitioner filed in response to a final revocation letter respondent issued in 2008 (revocation letter)

---

[1] All section references are to the Internal Revenue Code (Code), and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

stating that petitioner's Employee Stock Ownership Plan (ESOP) failed to meet the requirements under section 401(a) for 2000 to 2004 and that any related trust was not exempt from taxation under section 501(a).  Petitioner brings this action to invalidate respondent's retroactive revocation of the favorable determination letter he issued to it in 2001 (determination letter).

We must decide whether respondent may retroactively revoke the determination letter issued to petitioner.  We hold that respondent may retroactively revoke the determination letter.[2]

### Background

The parties have stipulated the administrative record under Rules 122 and 217(b)(2).  The record is incorporated by this reference.  Petitioner's principal place of business was Houston, Texas at the time it filed the petition.

---

[2]Petitioner argued in its petition that the limitations period under sec. 6501 bars assessment of tax.  We consider this argument unpersuasive as this is a declaratory judgment action and does not concern the assessment of tax.  See Roblene, Inc. v. Commissioner, T.C. Memo. 1999-161 (no limitations period applies to when a revocation of a qualification letter may be issued).  Petitioner also asserted in its petition that respondent improperly denied it the right to use respondent's employee plans compliance resolution system (EPCRS).  Petitioner did not raise this argument in its opening brief and is therefore deemed to have abandoned it.  See, e.g., Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001).

Dr. R. Scott Yarish (Dr. Yarish), a successful plastic surgeon, owned five medical practice entities.[3] They were R. Scott Yarish, M.D. PA, Crystal Outpatient Surgery Center, Inc. (Houston), Crystal Outpatient Surgery Center, Inc. (Lake Jackson), Skin Enrichment, Ltd., and Gulf Coast Plastic Surgery, PA (Gulf Coast). In 2000 Dr. Yarish received an offer from Dr. Gregory Pisarki (Dr. Pisarki) to purchase Gulf Coast. Dr. Yarish consulted with his attorney Michael C. Riddle (Mr. Riddle) about the sale. Mr. Riddle devised a plan for Dr. Yarish to receive significant tax savings from his business income. He advised Dr. Yarish to form an S corporation to manage his four medical practice entities as well as the medical practice Dr. Pisarki sought to purchase. The medical practice entities would pay a "consulting fee" to the S corporation and then deduct the fees as management services.

Mr. Riddle further recommended that the S corporation sponsor an ESOP to defer income earned by the S corporation.[4] It was intended that the income of the S corporation would pass through to the ESOP, and, because the ESOP would be tax exempt, it would pay no tax on the income until it was distributed to the

---

[3]Dr. Yarish held a greater-than-80-percent interest in each of the five entities. The other owners included trusts for the benefit of Dr. Yarish.

[4]Dr. Yarish's medical practice entities had to be owned by a doctor under State law and therefore could not have sponsored an ESOP.

ESOP participant.  Dr. Yarish would be the sole ESOP participant. In effect, Dr. Yarish's medical practice entities would divert money to an entity owned by a tax-exempt trust, creating a substantial cash and property benefit solely for Dr. Yarish.

Dr. Yarish approved of the plan Mr. Riddle presented.  He formed Yarish Consulting, Inc. (petitioner) as an S corporation and the ESOP in 2000.  He also required Dr. Pisarki, as a condition of acquiring Gulf Coast, to sign a consulting agreement with petitioner that obligated Gulf Coast to pay consulting fees to petitioner.  Dr. Yarish also caused the other four medical entities to sign agreements to pay consulting fees to petitioner. Dr. Yarish was named the ESOP's beneficiary, and Mr. Riddle served as the ESOP's trustee.  Dr. Yarish was the sole shareholder of petitioner, and shortly after forming the ESOP, Dr. Yarish owned 10 percent of the stock with the ESOP owning the remaining 90 percent.[5]  Dr. Yarish was the sole participant in the ESOP.

Petitioner submitted an application to respondent for a determination that the ESOP was a qualified employee benefit plan (application) in 2000.  Petitioner was listed as the plan's

_____

[5]Dr. Yarish sold 90 percent of petitioner's shares to the ESOP in exchange for a $900 promissory note and security agreement.  The ESOP repaid the promissory note to Dr. Yarish, and the 900 shares of petitioner held by the ESOP were allocated to Dr. Yarish's account in the ESOP.  All cash contributions to the ESOP were allocated to Dr. Yarish's account.

sponsor and employer.  Petitioner marked in its application that it was not a member of an affiliated service group or a controlled group of corporations under common control. Respondent issued the determination letter in 2001 that allowed the ESOP to be treated as an exempt trust under section 501(a). The determination letter included a proviso that the plan's continued qualification would depend on the plan's effect in operation.

Petitioner filed an annual return for the ESOP (annual return) for each year from 2000 to 2004.  Dr. Yarish was the sole participant in the ESOP during those years.  Petitioner's annual return for 2004 failed to alert respondent that a resolution had been adopted to terminate the plan.  The ESOP terminated on December 31, 2004, and petitioner rolled over the ESOP's assets totaling $2,439,503.05 into an individual retirement account (IRA) for Dr. Yarish.

Respondent audited the ESOP after the ESOP terminated. Respondent's examination concerned whether all eligible employees of Dr. Yarish and his medical entities participated in the ESOP. Respondent sought documents from petitioner regarding the ESOP. Petitioner provided respondent with, among other things, a list of related entities and a census of employees in the controlled group or affiliated group.  These documents contradicted petitioner's statement in its application that it was not a

member of an affiliated service group or a controlled group of corporations under common control.

Respondent issued a summons to Mr. Riddle as the ESOP's trustee and also sent Mr. Riddle a letter and first version of his "Explanation of Items Report." Mr. Riddle responded by letter stating that the failure to disclose potential control group issues on the ESOP's application was a "scrivener's error" and that the ESOP was not part of an affiliated service group at the time it filed its application. Mr. Riddle requested that petitioner be considered under respondent's employee plans compliance resolution system (EPCRS).[6] Respondent informed petitioner that he considered the ESOP to be a Management S corporation ESOP that was not eligible for EPCRS. Respondent identified the Management S corporation ESOP as an abusive tax avoidance transaction. See "Abusive Transactions that Affect Availability of Programs Under EPCRS," Internal Revenue Service Retirement Plans Community, http://www.irs.gov/retirement/article/0,,id=156240,00.html; see also Announcement 2005-80, 2005-2 C.B. 967.

Respondent discovered on audit that Dr. Yarish was the only employee participating in the ESOP. Respondent therefore took the position that the ESOP violated the coverage requirements.

---

[6]EPCRS consists of three correction programs taxpayers may use in certain circumstances to keep their retirement plans compliant.

See sec. 410(b).[7]  Respondent found the rank and file employees of Dr. Yarish and his medical entities received no benefit from the ESOP while Dr. Yarish's ESOP account increased by more than $2.4 million.  Respondent determined that the ESOP was not qualified as a retirement plan under section 401(a) and issued the revocation letter to the ESOP retroactively revoking the determination letter.[8]

Petitioner filed this declaratory judgment action challenging respondent's retroactive revocation of the ESOP's qualification.

---

[7]ESOPs receive favorable tax treatment to permit a large percentage of the employees of a control group or affiliated service group to receive the benefits of being part of a qualified plan.  See Weyher & Knott, ESOP, The Employee Stock Ownership Plan 12 (2d ed. 1985).  All employees of all corporations in the group shall be treated as employed by a single employer.  Sec. 414(b).

[8]There are three cases pending before this Court involving deficiencies related to the present case's declaratory judgment action regarding the ESOP's qualification.  First, respondent determined a $473,340 deficiency in petitioner's income tax for 2004 and an accuracy-related penalty under sec. 6662 for that year by classifying petitioner as a C corporation, not as an S corporation, which is the subject of Docket No. 24095-08.  Respondent also determined that Dr. Yarish and his wife had a $2,517,596 deficiency in income tax plus additional penalties for tax years 2004 through 2006 related to the IRA rollover, which is the subject of Docket No. 24096-08.  Respondent also determined a $146,200 deficiency and an accuracy-related penalty under sec. 6662 for 2004 by disallowing Dr. R. Scott Yarish, M.D. PA's deductions for paying any "consulting fee" to petitioner, which is the subject of Docket No. 24094-08.  Each of these three deficiency cases is separate and apart from the pending declaratory judgment proceeding.  Our determination here on the ESOP's qualification, however, will be relevant in the three pending deficiency cases.

## Discussion

We must decide whether respondent may retroactively revoke the determination letter issued to petitioner regarding the ESOP. Petitioner argues that respondent may not retroactively revoke the determination letter because the ESOP had terminated and all its assets had been distributed when respondent issued his revocation. Essentially, petitioner argues that respondent must catch the ESOP scheme while the ESOP is still in existence. We disagree. We begin by discussing our jurisdiction in declaratory judgment actions regarding the qualification of retirement plans.

## I. Jurisdiction

This Court is a court of limited jurisdiction and may exercise jurisdiction only if conferred by statute. Naftel v. Commissioner, 85 T.C. 527, 529 (1985). We have jurisdiction to make a declaratory judgment regarding an actual controversy involving a retirement plan's initial or continuing tax qualified status. Sec. 7476; Loftus v. Commissioner, 90 T.C. 845, 855 (1988), affd. without published opinion 872 F.2d 1021 (2d Cir. 1989); Shedco, Inc. v. Commissioner, T.C. Memo. 1998-295. The declaratory judgment proceedings under section 7476 were added to the Code to allow this Court to review a determination letter without a deficiency notice being issued or tax being assessed. See Shut Out Dee-Fence, Inc. v. Commissioner, 77 T.C. 1197, 1203 (1981).

We are puzzled by petitioner's argument that no actual controversy exists because it was petitioner, as the plan sponsor, who filed the petition "with respect to an actual controversy" asking the Court to reverse respondent's revocation letter. We have already ruled that an actual controversy exists and that we have jurisdiction in this case. Order dated Oct. 5, 2009. We stand by our ruling.[9]

## II. Revoking a Prior Favorable Determination Letter Retroactively

We now consider whether respondent may revoke his prior determination letter retroactively. Generally, the Commissioner's administrative rulings have both prospective and retroactive effect. Sec. 7805(b)(8); Manhattan Gen. Equip. Co. v. Commissioner, 297 U.S. 129, 134 (1936); Oakton Distribs., Inc. v. Commissioner, 73 T.C. 182, 195 (1979); Harwood Associates, Inc. v. Commissioner, 63 T.C. 255, 263 (1974); see Rev. Proc. 2008-4, sec. 14.02, 2008-1 C.B. 121, 151 (revocation or modification of a letter ruling applies to all years open under

---

[9]Petitioner filed a second motion to dismiss while this case was under advisement. We will similarly deny this second motion as our jurisdiction remains intact. See Rule 60(c); see also Tex. Bus. Corp. Act Ann., art. 7.12(A) (West 2003); Tex. Bus. Orgs. Code Ann. sec. 11.052 (West 2009) (Texas corporations may prosecute or defend an action after dissolution). Moreover, we distinguish the sole case upon which petitioner relies. See Natl. Republican Found. v. Commissioner, T.C. Memo. 1988-336 (case commenced under sec. 7428). Unlike cases under sec. 7428, we are not concerned about the deductibility of charitable contributions to the donees. See Urantia Found. v. Commissioner, 684 F.2d 521, 524 (7th Cir. 1982), affg. 77 T.C. 507 (1981).

the limitations period).  The Commissioner may, however, limit the retroactive effects of a determination letter.  Sec. 7805(b)(8).  Allowing the Commissioner to apply rulings prospectively was intended to avoid inequity for persons who had completed transactions in reliance upon existing practices.  See H. Rept. 704, 73d Cong., 2d Sess. 38 (1934), 1939-1 C.B. (Part 2) 554, 583; S. Rept. 558, 73d Cong., 2d Sess. 48 (1934), 1939-1 C.B. (Part 2) 586, 623.  We apply an abuse of discretion standard in reviewing the Commissioner's decision to revoke a determination retroactively.  Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 184 (1957); see Dixon v. United States, 381 U.S. 68 (1965).  We will reverse the Commissioner's determination only if we determine it to be arbitrary and capricious.  Auto. Club of Mich. v. Commissioner, supra at 184.

We now focus on whether respondent's retroactive revocation of the ESOP's qualification was arbitrary or capricious. Taxpayers may request that the Commissioner limit a revoked ruling's retroactive effect by filing a technical advice request. Rev. Proc. 2008-4, sec. 14.02.  Taxpayers must include a written statement that the claim is being made under section 7805(b). Id.  The request must include a statement of the facts and the relief sought.  Id.  It must also include legal support for the claim and any documents bearing on the request.  Id.  In addition, any request for section 7805(b) relief must be

considered by the Commissioner's National Office. Internal Revenue Manual pt. 1.2.53.3 (Dec. 2, 1996) (Delegation Order 96 (Rev. 13)).

Here, petitioner failed to make a formal request for section 7805(b) relief. Mr. Riddle's letter to respondent did not formally request that the examiner seek technical advice from respondent's National Office. Nor does the administrative record contain evidence that petitioner took any procedural steps that a formal request for section 7805(b) relief requires. Petitioner failed to take the required steps to request section 7805(b) relief. Accordingly, we find that it is not entitled to section 7805(b) relief.

The Commissioner has also prescribed certain limitations on his ability to retroactively revoke a determination. See <u>Ronald R. Pawlak, P.C. v. Commissioner</u>, T.C. Memo. 1995-7; sec. 601.201(l)(5), Statement of Procedural Rules. A revocation will have only prospective effect if the Commissioner determines that there has been no misstatement or omission of material facts, the facts subsequently developed are not materially different from the facts on which the ruling was based, there has been no change in the applicable law, the ruling was originally issued with respect to a prospective or proposed transaction, and the taxpayer directly involved in the ruling acted in good faith reliance upon the ruling and the retroactive revocation would be

to his detriment.  Sec. 601.201(l)(5), Statement of Procedural Rules.  When petitioner submitted its application, the revenue procedure then governing a request for a determination letter made clear that failure to disclose material facts or provide all material information on an application would prevent an applicant from relying on any resulting determination letter.  See Rev. Proc. 2000-6, sec. 6.15, 2000-1 C.B. 187, 199.  Petitioner must prove that it complied with these requirements, including the requirement that there be no omission of material fact, as a predicate to its claim that the revocation letter should have only prospective effect.  Sec. 601.201(l)(5), Statement of Procedural Rules.

Petitioner concedes that it erroneously marked the box stating that it was not part of an affiliated service group or control group when it submitted its application.  Petitioner continued to make the same misstatement on each of its four annual returns.  Petitioner claims nonetheless that these misstatements were inadvertent "scrivener's errors" and should be disregarded.

The "scrivener's error" defense is a common law doctrine that allows parties to reform an instrument that uses words that do not reflect the parties' clear agreement.  See 7-28 Corbin on Contracts, sec. 28.39 (2010).  The scrivener's error defense does not apply, however, where a mistaken term was added to the plan

through a unilateral mistake by the drafter.  <u>Humphrey v. United Way of the Tex. Gulf Coast</u>, 590 F. Supp. 2d 837, 847 (S.D. Tex. 2008).  Here, there was no mutual mistake of understanding between respondent and petitioner.  Rather, petitioner failed to disclose its affiliated service group status on its application and continued to omit references to its affiliated service group status in its annual return filings over the next four years.  We hold that the scrivener's error defense does not apply.

Accordingly, we hold that petitioner has not shown that respondent abused his discretion by retroactively revoking the ESOP's qualification.  We find no requirement that respondent must catch the scheme while the ESOP is still in existence.  Moreover, petitioner has not shown that it is entitled to section 7805(b) relief.

We have considered all remaining arguments the parties made and, to the extent not addressed, we find them to be irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered for respondent, and an appropriate order will be issued regarding petitioner's second motion to dismiss</u>.