486 F.2d 757
 REX CHAINBELT, INC., a Wisconsin corporation, on behalf of
itself and all others similarly situated,
Plaintiff-Appellant,
v.
John A. VOLPE, Secretary, Department of Transportation, et
al., Defendants-Appellees.
 No. 72-1540.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 23, 1973.
Decided Sept. 19, 1973.
Rehearing Denied Nov. 2, 1973.
 
 Andrew O. Riteris, Edward W. Mentzer, Milwaukee, Wis., for plaintiff-appellant.
 David J. Cannon, U. S. Atty., Joseph P. Stadtmueller, Asst. U. S. Atty., Milwaukee, Wis., for defendants-appellees.
 Before CASTLE and MOORE*, Senior Circuit Judges, and CUMMINGS, Circuit Judge.
 CASTLE, Senior Circuit Judge.
 
 
 1
 Pursuant to the provisions of the National Traffic and Motor Vehicle Safety Act of 1966, the acting administrator of the National Highway Traffic Safety Administration (NHTSA) promulgated regulations requiring conformance to certain safety standards in the manufacture and assembly of motor vehicles. In this action Rex Chainbelt, Inc., suing on behalf of itself and others similarly situated, seeks a declaratory judgment that certain of these regulations are invalid because they either exceed the authority of the administrator, or because they are unreasonable.
 
 
 2
 Rex is primarily engaged in the manufacture of concrete mixer bodies, which, when attached to truck chassis, are used to transport wet cement from cement plants to job sites. Since Rex neither manufactures nor sells truck chasses, its customers must first visit truck manufacturers such as Ford, Mack, or International Harvester or their dealers, and purchase and accept delivery on a chassis. The customers apparently specify to the truck dealers what kind of mixer they wish to mount on the truck they wish to purchase, and, on the basis of these representations, the dealers recommend a particular model of chassis. The customer then drives the truck chassis to Rex or a Rex dealer for installation of the mixer unit, or he acquires and installs the mixer unit himself.
 
 
 3
 As part of its comprehensive standards concerning motor vehicles, NHTSA promulgated regulations governing trucks which are assembled in two or more stages, such as cement mixer trucks whose chassis are assembled before mixers are attached by a mixer manufacturer. One of these regulations requires Rex, as installer of the mixer units, to complete the truck in such a manner that it will conform to all applicable federal safety standards. 49 CFR Sec. 568.6(a). Federal safety standards currently cover such things as transmission shift levers, windshield defrosting, washing, and wiping, hood latches, brake fluids, door locks, seats, seat belts, and crash protection. Another regulation requires Rex to certify that the entire vehicle-including every item of equipment selected, installed and sold to the customer by Ford, Mack and other truck manufacturers-conforms to applicable federal standards. 49 CFR Sec. 568.6(b). When NHTSA rejected Rex's objections to these regulations, Rex filed a declaratory judgment action challenging the requirement that it certify the entire vehicle, on the grounds that NHSTA had either exceeded the power granted to it under the statute or had enacted unreasonable regulations that would impose liability upon Rex under a warranty theory for defects in equipment which it had not installed or affected.[1] The district court ruled against Rex on both grounds. 342 F.Supp. 281 (E.D.Wis. 1972).
 
 I. Statutory and Regulatory Scheme
 
 4
 The National Highway Traffic Safety Act of 1966 was enacted to reduce traffic accidents through the establishment and enforcement of motor vehicle safety standards and the encouragement of safety research. 15 U.S.C. Sec. 1381. Accordingly, the Secretary of Transportation or his designate is empowered to establish federal safety standards after a consideration of various pertinent factors. Sec. 1392(a) and (f). The Act makes it unlawful for any person to manufacture for sale, sell, offer for sale, or introduce or deliver for introduction in interstate commerce any vehicle not in conformity with the safety standards. Sec. 1397(a)(1). If in fact a vehicle is sold which does not conform to such standards, the Secretary may impose penalties upon the offending party (Sec. 1398), a dealer or distributor holding the vehicle may require the manufacturer or distributor from whom he obtained the vehicle to repurchase it (Sec. 1400), and the manufacturer may be required to notify the purchaser of the existence of the defect and the means of correcting it (Sec. 1402). The Act also provides for the dissemination of technical and performance data (Sec. 1401), and requires a certification of conformity pursuant to the terms of Sec. 1403:
 
 
 5
 Every manufacturer or distributor of a motor vehicle or motor vehicle equipment shall furnish to the distributor or dealer at the time of delivery of such vehicle or equipment by such manufacturer the certification that each such vehicle or item of motor vehicle equipment conforms to all applicable Federal motor vehicle safety standards. In the case of an item of motor vehicle equipment such certification may be in the form of a label or tag on such item or on the outside of a container in which such item is delivered. In the case of a motor vehicle such certification shall be in the form of a label or tag permanently affixed to such motor vehicle.
 
 
 6
 The Act provides penalties for those who fail to issue a certificate required by section 1403, or who issue a certificate to the effect that a motor vehicle conforms to all applicable federal motor vehicle safety standards when the issuer has reason to know in the exercise of due care that such certification is false or materially misleading. Sec. 1397(a)(3).
 
 
 7
 Pursuant to the authority granted in Sec. 1407 to make such rules and regulations as he deems necessary to carry out the above statutory provisions, the Secretary provided for issuance of the regulations which Rex attacks in this action. These regulations denominate Rex as a "final-stage manufacturer" of motor vehicles, since it transforms an "incomplete vehicle" into a "completed vehicle" which requires "no further manufacturing operations to perform its intended function. . . ." 49 CFR Sec. 568.3. The manufacturer of the chassis-cab, be it Ford, General Motors, or any other concern, is therefore an "incomplete vehicle manufacturer." Id. Rex, as the final-stage manufacturer, must certify that the entire vehicle-chassis and mixer-conforms to all applicable federal safety standards. 49 CFR Sec. 568.6(b). The incomplete vehicle manufacturers have only to supply Rex with a listing of all the safety standards which apply to the equipment installed in the chassiscab assembly, and information as to the extent to which such equipment conforms to these standards.[2] Rex must then rely upon this information while installing the mixer, and must then attach a certification plate to the vehicle. This plate lists the dates when manufacturing operations were performed on the vehicle, gives various technical data, and identifies the manufacturer of the "incomplete vehicle." More importantly, this plate must state that the vehicle was "manufactured by" Rex and must contain the words: "This vehicle conforms to all applicable Federal motor vehicle safety standards in effect on the date of manufacture shown above." Although this language is sufficiently ambiguous so that it does not actually identify which manufacturer is certifying which pieces of equipment on the vehicle, the regulations unequivocably state that Rex is the party that must certify all the equipment on the entire vehicle. 49 CFR Sec. 568.6(b).
 
 II. Validity of the Regulations
 
 8
 In this appeal Rex has vociferously objected to the requirement of 49 CFR Sec. 568.6(b) that it certify the entire cement mixer vehicle once it has attached a new mixer. It argues first that the Secretary did not have the authority to enact regulations requiring it to certify vehicles, since 15 U.S.C. Sec. 1403 (quoted supra) is inapplicable to equipment manufacturers like itself who do not operate through dealers and distributors, but who simply return a customer's truck to him once the mixer is installed. Secondly, it submits that the attachment of the certification plate will make it a warrantor of the equipment installed by the "incomplete vehicle manufacturer" and liable for damages for breach of warranty should this equipment fail; it further contends that, because differences in applicable statutes of limitations, possible insolvency of the incomplete manufacturer, and the vagaries of juries may prevent successful recourse against the manufacturer who selected and installed the equipment, the certification regulations are also unreasonable.[3]
 
 
 9
 In response the government has argued that the requirement of Sec. 1403 that every manufacturer furnish the certification of conformity "to the distributor or dealer at the time of delivery" should be construed "as defining the time when the certification requirement becomes effective rather than the group whom the requirement is intended to protect." It has also stated that certification is not equivalent to a warranty, and that even if certification were to be interpreted as a warranty, Rex could escape liability by establishing that it exercised due care in observing the conditions specified by the incomplete manufacturer in the document which it is required to provide.
 
 
 10
 The district court did not discuss Rex's first argument concerning the Secretary's lack of authority to impose the certification requirement under Sec. 1403, but obviously did not accept it. As to the reasonableness of the regulations, the district court apparently assumed that the certification requirement would be unreasonable if Rex were to be held liable for defects in equipment that it certified but did not install. However, the court reasoned that Rex could successfully defend any action based on the certification by showing that it relied on the statement of conformity supplied by the incomplete vehicle manufacturer, and that Rex could also demand additional assurances or protection from the incomplete vehicle manufacturer.[4] 342 F.Supp. at 285.
 
 
 11
 We perceive the fundamental issues on this appeal to be 1) whether the Secretary has the authority to require manufacturers who do not deal through distributors and dealers to perform some sort of certification, and 2) whether the particular certification regulations involved here are valid under the terms of the statute. We find it unnecessary to reach a third issue of whether the regulations are reasonable.
 
 
 12
 We find that the district court acted correctly in rejecting Rex's argument that the Act does not authorize the imposition of any kind of certification requirement upon manufacturers not selling through distributors and dealers. Section 1407 of the Act provides:
 
 
 13
 The Secretary is authorized to issue, amend, and revoke such rules as he deems necessary to carry out this subchapter.
 
 
 14
 Such a broad grant of authority enabling the Secretary to impose all requirements which he deems "necessary" to facilitate his enforcement functions is indeed quite extensive.[5] Regulations promulgated pursuant to this delegation of power are to be upheld by a reviewing court if they conform to the purposes and policies of the Act and if they do not contravene any of its terms. Dixon v. United States, 381 U.S. 68, 74, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965), Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936), Niagara Mohawk Power Corp. v. Federal Power Com'n, 126 U.S.App.D.C. 376, 379 F.2d 153, 158 (1967). We note that the purposes and policies of the Act are directed at providing safety information to the consumer.[6] Furthermore, Sec. 1403 does not prohibit the imposition of further certification requirements by regulations of the Secretary but merely specifies who must certify their vehicles. We therefore find that the Secretary has power under the Act to require manufacturers not working through distributors and dealers to certify their vehicles or their equipment.
 
 
 15
 We find, however, that the present regulations which require Rex to certify the vehicles and items of equipment manufactured and installed by the incomplete vehicle manufacturer are invalid because they clearly contravene the language of the Act. Dixon v. United States, supra, Manhattan General Equipment Co. v. Commissioner of Internal Revenue, supra, Niagara Mohawk Power Corp. v. Federal Power Com'n, supra. Section 1403 clearly requires "every manufacturer" to certify the compliance of the vehicles he delivers to dealers and distributors, and Sec. 1391(5) plainly indicates that an "incomplete vehicle manufacturer" is a "manufacturer" within the meaning of Sec. 1403. But the regulations currently in effect relieve incomplete vehicle manufacturers who sell their trucks to Rex customers of the duty to certify their vehicles and to assume any legal liabilities that may be imposed because of this certification. Congress has mandated that the incomplete vehicle manufacturer conform to all applicable federal safety standards before selling his vehicles. Sec. 1397(a) (1). We believe that Congress intended certification to be a necessary adjunct to the enforcement of this requirement. Finally, the regulations as they presently exist do not protect a customer who purchases a chassis cab from an incomplete vehicle manufacturer and who then installs the mixer by himself. No one is required to certify the chassis in this situation, unless the customer who "assembles" the mixer to the chassis within the meaning of Sec. 1391(5) is to certify the vehicle to himself.
 
 
 16
 Therefore, to the extent that the regulations require Rex to make the sole certification of compliance of the entire vehicle and contravene the clear language of Sec. 1403, they must be declared invalid.[7]
 
 
 17
 We realize that an incomplete vehicle manufacturer may be in such a position that many components of the vehicle he manufactures will be altered by a final-stage manufacturer. We also realize that a listing of the components which purportedly conform to federal standards and those which may conform only under certain conditions may defy the space available on a label permanently attached to a vehicle. The Secretary may devise regulations to deal with such problems, and the present regulations are certainly a commendable approach. Of course, such regulations must conform to Sec. 1403 and the other provisions of the Act.
 
 
 18
 This case is therefore reversed and remanded to the district court for entry of judgment in accordance with this opinion.
 
 
 19
 Reversed and remanded.
 
 
 
 *
 Senior Judge Leonard P. Moore of the United States Court of Appeals for the Second Circuit is sitting by designation
 
 
 [1]
 Rex's complaint for declaratory relief did not seek a decision on the validity of 49 CFR Sec. 568.6(a), which requires it to "complete the vehicle in such a manner that it conforms to the standards in effect on the date of manufacture of the incomplete vehicle, the date of final completion, or a date between those two dates." In this action Rex is only attacking the requirement that it certify that the vehicle conforms to all applicable federal standards when it leaves its plant with a mixer unit installed. Consequently, we intimate no opinion on the validity of Sec. 568.6(a) of the regulations
 
 
 [2]
 Three kinds of statements regarding the conformity of the equipment are allowed under the regulations. 1) The incomplete vehicle manufacturer can declare that an item of equipment will conform to the particular standard involved if no alterations are made to the item by the final stage manufacturer. 2) He can list specific conditions under which the item can be expected to conform to the standard-e.g. that the vehicle will meet airbrake standards if the final stage manufacturer does not alter brake system components or raise the center of gravity of the vehicle beyond a certain point. 3) He can decline to make any representations as to the conformity of the vehicle with the standard because conformity cannot be determined by the present design or status of the vehicle. 49 CFR Sec. 568.4(i), (ii) and (iii). Unfortunately, the record does not indicate what representations of conformity are normally made to Rex regarding the various items of equipment installed on the chassis cab by Ford, GM, and others. It appears, however, that the regulations require the incomplete vehicle manufacturer to give as much information about conformity and the conditions under which it can be expected, rather than allowing a blanket invocation of the third alternative
 
 
 [3]
 Rex has admitted that installation of the mixer body does require modification of the lighting systems on the chassis brought in by a customer, and that it is willing to certify the lighting. The parties are apparently in dispute as to whether the installation of a mixer would affect the braking system of a chassis, however
 
 
 [4]
 The court did not specify what assurances could be obtained or whether the incomplete vehicle manufacturers would give them to Rex. In fact, an affidavit filed by Rex stated that Rex has sought to have incomplete vehicle manufacturers take legal responsibility for defects in the equipment they installed but has been unsuccessful
 
 
 [5]
 There is no question that a delegation of power to enact all regulations deemed "necessary" is valid. Thorpe v. Housing Auth. of City of Durham, 386 U.S. 670, 673 n. 4, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967); American Trucking Ass'ns v. United States, 344 U.S. 298, 311, 73 S.Ct. 307, 97 L.Ed. 337 (1953); McKinley v. United States, 249 U.S. 397, 398-399, 39 S.Ct. 324, 63 L.Ed. 668 (1919)
 
 
 [6]
 See, e.g., Secs. 1401(d), 1402(a), and 1403. See also 112 Cong.Rec. 14,229 (1966) (remarks of Senator Magnuson), S.Rep. No. 1301, 1966 U.S.Code, Cong. & Ad. News, pp. 2709, 2716
 
 
 [7]
 This holding makes it unnecessary to decide a more difficult issue, i.e., the exact legal implications of certifying a vehicle. Rex argues that such a certification amounts to a warranty which makes the warrantor liable when an item of equipment installed by another is discovered to be nonconforming. We note, however, that liability is usually imposed under the warranty theory when the warrantor induces the sale of his product on the strength of his representations. See, e.g., W. Prosser, Law of Torts Sec. 97 at 651-53, Uniform Commercial Code Sec. 2-313. Since Rex does not produce or manufacture what is being called upon to warrant under the present regulations, there is some dispute as to whether it may be liable under a warranty theory. Rex has also argued that certification under the present regulations could make it liable for negligent misrepresentation if it does not exercise due care in ascertaining the truth of what it represents. Hanberry v. Hearst Corp., 276 Cal.App.2d 680, 81 Cal.Rptr. 519 (1969), Restatement (Second) of Torts Sec. 311. Although the Act and the regulations themselves suggest that reliance upon the statements provided by the incomplete manufacturer pursuant to 49 CFR Sec. 568.4 could establish due care on the part of the final stage manufacturer to protect it from statutory liability, 15 U.S.C. Sec. 1397(b) (2) and 49 CFR Sec. 567.6, we cannot predict what view will be taken by the courts of 50 state jurisdictions. Finally, we observe that the government's assertion that certification is not to be equated with liability is belied by the regulations, which provide that, if an incomplete manufacturer wishes to assume full liability under the Act, he shall be required to attach the certification plate which does not contain the name of the final-stage manufacturer. 49 CFR Sec. 567.5(b). We assume our holding here should avoid involvement in such a legal quagmire